UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                               :

MIKE JOSIE,                                   :             21-CV-2486 (ARR) (RER)
                                               :

             *Plaintiff*                 :

     -against-                            :             <u>NOT FOR ELECTRONIC</u>
                                             :             <u>OR PRINT PUBLICATION</u>

CITY OF NEW YORK, DETECTIVE ANDREW HUNT  :
[SHIELD #416], SERGEANT SCOTT MILLER [SHIELD  :             **OPINION & ORDER**
#29322], SERGEANT ROBERT H. MAMYS [SHIELD  :
#5563], P.O. ANTHONY DAVILA [SHIELD #14220],  :
P.O. MICHAEL ZWEIFLER [SHIELD #14406],      :
SERGEANT JOHN ZANCA [SHIELD #1700], P.O.    :
PATRICK O. REILLY [SHIELD #16493], P.O. JARRETT  :
NADAL [SHIELD #19273], P.O. DANIEL ATHERLEY  :
[SHIELD #1422], SERGEANT JASON REISGERZOG  :
[SHIELD #4576], AND JOHN DOE and JANE DOE #1-6,  :
                                             :

            *Defendants*.              :

------------------------------------------------------------------- X

ROSS, United States District Judge:

In this civil rights action, brought pursuant to 42 U.S.C. § 1983, plaintiff Mike Josie ("plaintiff") alleges that defendants City of New York ("municipal defendant"), New York Police Department ("N.Y.P.D.") Detective Andrew Hunt, Sergeant Scott Miller, Sergeant Robert H. Mamys, Sergeant John Zanca, Sergeant Jason Reisgerzog, Officers Anthony Davila, Michael Zweifler, Patrick O. Reilly, Jarrett Nadal, Daniel Atherley, and various John and Jane Doe police officers (collectively, "defendants"),[1] on numerous occasions, violated and conspired to violate

---

[1] Plaintiff groups the defendants into subsets as follows: defendants Hunt, Miller, Mamys, and John and Jane Doe officers are identified as the "Hunt defendants"; defendants Davila, Zweifler, Zanca, and John and Jane Doe officers are identified as the "Davila defendants"; defendants Reilly, Nadal, Atherley, Resigerzog, and John and Jane Doe officers are identified as the "Reilly

his constitutional rights and/or failed to intervene when his rights were being violated. Plaintiff also brings supplemental New York State constitutional and common law tort claims arising from the same set of facts. The defendants have brought a partial motion to dismiss the plaintiff's amended complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, as detailed below. For the following reasons, I grant the motion in part and deny the motion in part.

## BACKGROUND

The following facts are drawn from the amended complaint ("the complaint"). Am. Compl., ECF No. 18. For the purposes of deciding this motion, the factual allegations in the complaint are accepted as true. *See Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).

The plaintiff alleges that he was unlawfully arrested on three different occasions:

*June 26, 2019*

The plaintiff alleges that on the morning of June 26, 2019, the Hunt defendants arrested him without probable cause at his home in Brooklyn, New York ("first arrest"). Am. Compl. ¶¶ 20, 25. He was charged with various crimes, including two counts of grand larceny in the fourth degree. *Id.* ¶ 25. The plaintiff maintains that he did not commit any crime or offense. *Id.* ¶ 26. On the morning in question, the plaintiff alleges that the Hunt defendants forced their way into Plaintiff's home, damaged his property, woke him from his sleep, rushed at him with their guns drawn, grabbed, pushed, and shoved him, and tightly handcuffed him. *Id.* ¶¶ 27–29. As a result of the handcuffing, the plaintiff experienced pain and numbness, but the officers ignored his requests for the handcuffs to be loosened. *Id.* ¶¶ 29–32. Plaintiff alleges that the officers performed an

---

defendants." The individual defendants are referred to collectively as "defendant officers." Am. Compl. ¶¶ 20–23, ECF No. 18.

illegal search of his person, which yielded no contraband. *Id.* ¶¶ 33–34. The officers then transported him to the 88th Precinct, where plaintiff was searched again and questioned about "guns and gangs." *Id.* ¶¶ 35–38. Plaintiff alleges that the Hunt defendants met with prosecutors from the Kings County District Attorney's Office, forwarded them their reports, and falsely swore to the criminal complaint that provided the basis for plaintiff's arraignment on June 27, 2019. *Id.* ¶¶ 40–43. Plaintiff was eventually released on his own recognizance after being held for an unspecified length of time. *Id.* ¶ 44. He appeared in court on multiple occasions, but charges were ultimately dismissed on or about October 31, 2019. *Id.* ¶¶ 45–46.

*August 1, 2019*

The plaintiff alleges that on August 1, 2019, the Davila defendants arrested him without probable cause in Brooklyn, New York ("second arrest"). Am. Compl. ¶¶ 21, 47. He was charged with grand larceny in the fourth degree, unauthorized use of stolen property in the fourth degree, unauthorized use of a stolen vehicle in the third degree, and reckless endangerment in the second degree. *Id.* ¶ 47. The plaintiff maintains that he did not commit any crime or offense. *Id.* ¶ 48. Plaintiff claims that he had hitched a bike ride with a friend and after he had dismounted the bike at his destination, the Davila defendants "bum-rushed" him. *Id.* ¶¶ 49–51. The officers grabbed him, tightly handcuffed him, forced him to the ground and held him there face down with their feet on his back. *Id.* ¶¶ 52–53. As a result of the handcuffing, the plaintiff experienced pain, numbness, cuts, and bruises. *Id.* ¶¶ 52, 56. The officers allegedly ignored his requests for the handcuffs to be loosened. *Id.* ¶¶ 57–58. Plaintiff alleges that the officers performed an illegal search of his person, which yielded no contraband. *Id.* ¶¶ 59–60. The officers then transported him to the 79th Precinct, where plaintiff was searched again and questioned about "guns and gangs." *Id.* ¶¶ 61, 62, 65. Officers allegedly denied his requests for medical treatment. *Id.* ¶ 66. Plaintiff

alleges that the Hunt defendants met with prosecutors from the Kings County District Attorney's Office and forwarded them their reports. *Id.* ¶¶ 69–70. Plaintiff was transported to Central Booking to await arraignment, but prosecutors declined to prosecute, and he was released. *Id.* ¶¶ 68, 73, 74.

*December 30, 2020*

The plaintiff alleges that on the morning of December 30, 2020, the Reilly defendants arrested him without probable cause at his home in Brooklyn, New York ("third arrest"). Am. Compl. ¶¶ 22, 75. He was charged with various crimes, including robbery in the third degree. *Id.* ¶ 25. The plaintiff maintains that he did not commit any crime or offense. *Id.* ¶ 76. On the morning in question, the plaintiff alleges that the Reilly defendants forced their way into his home, damaged his property, woke him from his sleep, rushed at him with their guns drawn, grabbed, pushed, and shoved him, and tightly handcuffed him. *Id.* ¶¶ 77–79. As a result of the handcuffing, the plaintiff experienced pain and numbness, but the officers ignored his requests for the handcuffs to be loosened. *Id.* ¶¶ 79–82. Plaintiff alleges that the officers performed an illegal search of his person, which yielded no contraband. *Id.* ¶¶ 83–84. The officers then transported him to the 79th Precinct, where plaintiff was searched again and questioned about "guns and gangs." *Id.* ¶¶ 85–88. Plaintiff alleges that the Reilly defendants met with prosecutors from the Kings County District Attorney's Office, forwarded them their reports, and falsely swore to the criminal complaint that provided the basis for plaintiff's arraignment on December 31, 2020. *Id.* ¶¶ 90–93. Plaintiff was eventually released on his own recognizance, after being held for an unspecified length of time. *Id.* ¶ 94. He appeared in court on multiple occasions, but the charges were dismissed on or about April 20, 2021. *Id.* ¶¶ 95–96.

*Other Incidents*

The plaintiff also alleges that on at least three other specific occasions—May 8, 2019, July 1, 2019, August 28, 2019, and unspecified "various other dates"—officers assigned to N.Y.P.D.'s 79th Precinct unlawfully stopped, frisked, detained, and/or arrested him and his family and friends (collectively, "other incidents"). *Id.* ¶ 99. Plaintiff alleges his August 28, 2019, arrest resulted in charges being filed against him, requiring him to appear in court multiple times. *Id.* ¶¶ 102–103. Those charges were subsequently dropped. *Id.* ¶ 104. Plaintiff contends that "each and every officer who responded to and/or was present at the location of the arrest(s) and at the precinct" knew that the plaintiff had not committed any crime. *Id.* ¶ 105.

*Procedural History*

Plaintiff commenced this case on May 4, 2021, alleging federal and state law claims. ECF No. 1. On October 21, 2021, the defendants filed a pre-motion letter regarding an anticipated motion to dismiss, in which they stated numerous objections to plaintiff's claims, including arguments regarding the sufficiency of plaintiff's pleading. ECF No. 16. Plaintiff responded on November 1, 2021. ECF No. 17. In light of these pre-motion letters, I directed the plaintiff to file an amended complaint, to "include all claims plaintiff seeks to bring; name all intended defendants associated with each claim, referring to defendants collectively only where defendants engaged in the same conduct; and articulate clear bases for each claim, including specific and relevant factual allegations." Dkt. Order, Nov. 2, 2021. I also stated my expectation that the First Amended Complaint would "be plaintiff's last and best pleading." *Id.* Plaintiff filed an amended complaint on November 15, 2021. ECF No. 18. This motion to dismiss followed. ECF No. 30.

## DISCUSSION

Plaintiff alleges claims, pursuant to Section 1983, for the following: (i) false arrest; (ii) malicious prosecution; (iii) fabrication of evidence and denial of right to a fair trial; (iv) unlawful stop and frisk and unreasonable search and seizure; (v) excessive use of force; (vi) deliberate indifference; (vii) unlawful entry; (viii) denial of right to equal protection; (ix) failure to intervene; (x) conspiracy to deprive the plaintiff of his constitutional rights; and (xi) *Monell* liability; as well as (xii) New York State Constitutional claims; (xiii) state tort claims of false arrest and imprisonment, malicious prosecution, assault and battery, trespass, and negligent and intentional infliction of emotion distress; and (xiv) state law claim of negligent hiring and retention of employment services. Except as otherwise specified, these claims are made against all defendants. Defendants seek to dismiss all claims, with the exception of the plaintiff's false arrest claim as to his first, second, and third arrests. I will address each claim in turn.

### I.        Legal Standard for a Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), I must "accept all factual allegations as true" and "draw all reasonable inferences in favor of the plaintiff[]." *Melendez*, 16 F.4th at 1010 (quotation omitted). A claim is sufficiently plausible to withstand a motion to dismiss when the "factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Determining whether a claim has facial plausibility is "a context-specific task that requires the . . . court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.        Sufficiency of Pleading

Plaintiff's amended complaint raises a number of concerns as to the sufficiency of its pleading. The amended complaint sets forth thin factual allegations spanning over a year and a half that in many instances merely recite legal conclusions. The paucity of the plaintiff's factual pleading makes it, in some instances, nearly impossible to determine the plausibility of the asserted claims.[2] Although plaintiff already was afforded an opportunity to amend his complaint to address pleading deficiencies, I find it necessary to reiterate that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978). Plaintiff's reliance on group pleading and the barest of factual allegations has placed an immense burden on defendants and this court. *Cannon v. NYS Comm'r of Soc. Servs.*, No. 19-CV-6493 (CM), 2019 WL 3743975, at *2 (S.D.N.Y. Aug. 7, 2019) (failure to comply with Rule 8 presents "far too [heavy a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [a plaintiff's] claims" (quotation omitted)); *see also   McClean v. Cty. of*

---

[2] Plaintiff's counsel seems to be under the impression that the complaint is subject to a special § 1983 pleading standard that sidesteps the requirements established in *Twombly* and *Iqbal*. *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss 5, ECF No. 34 ("Pl.'s Mem.") (citing *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000)). But he misunderstands what is required of factual pleading—sufficient substantive plausibility—as opposed to what is permissible in a complaint—courts may not dismiss a complaint for an imperfect statement of a legal theory supporting a claim for relief. *Compare id. with Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (overturning a Fifth Circuit decision that imposed a heightened standard in § 1983 by requiring a plaintiff to specifically invoke a legal theory under that statute but noting that the complaint was not factually deficient and had "simply, concisely, and directly" stated events that they alleged entitled them to relief). A plaintiff *must*, however, provide sufficient factual pleading to state a claim for relief.

*Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at \*7 (S.D.N.Y. Dec. 3, 2018) ("Were Plaintiff pro se and entitled to 'special solicitude,' the hours spent unraveling his claims and arguments would have been appropriate. But the Court should not have to make such efforts when the plaintiff is represented by counsel") (citation omitted). Nevertheless, I have endeavored to decipher the claims plaintiff has alleged and draw all *reasonable* inferences to which the plaintiff is entitled. I am not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Defendants argue that the complaint as a whole violates Federal Rule of Civil Procedure 8's prohibition on group pleading and that the plaintiff has failed to allege any personal involvement by four of the named individual defendants. Complaints "that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (collecting cases). "It is well settled that in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). "[D]irect participation as a basis of liability is personal participation by one who has knowledge of the facts that rendered the conduct illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

As a corollary to the personal-involvement rule, complaints that rely on "group pleading" and "fail[] to differentiate" as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001). "It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (quotation omitted). Federal Rule of Civil Procedure 8(a) requires that

a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That rule "is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Monterey*, 531 F. Supp. 3d at 728 (quotation omitted); *see also Atuahene*, 10 F. App'x at 34 (internal quotation omitted) ("Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.").

Defendants argue that the plaintiff has failed to sufficiently allege personal involvement of supervisory defendants Sgts. Mamys, Zanca, Reisgerzog, and Miller. Defs.' Mem. in Support of Mot. to Dismiss 10, ECF No. 32 ("Defs.' Mem."). Defendants' argument rests on the principle that "[t]he mere listing of these officers as supervisors . . . is insufficient to create an inference of personal involvement absent further allegations, . . . because a defendant may not be held liable merely by his connection to the events through links in the chain of command." *Li*, 246 F. Supp. 3d at 599 (quotation and interior marks omitted). But plaintiff has not alleged a theory of supervisory liability. Josie instead alleges that the individual defendants, including those who hold supervisory positions, were present at and participated directly in the respective arrests. Those facts, assumed to be true, are sufficient to allege personal involvement and I need not consider whether Sgts. Mamys, Zanca, Reisgerzog, and Miller caused plaintiff's constitutional deprivation through their supervisory responsibilities at this juncture.

Defendants' objections as to plaintiff's group pleading also fall short as they pertain to the allegations attached to the first, second, and third arrests. In regard to each of those incidents, plaintiff has listed individual defendants and specified that those individuals are being referred to collectively. Such categorization is not equivalent to the deficient pleading that Rule 8 is meant to

foreclose. *See Serrata v. Givens*, No. 18-CV-2016 (ARR), 2019 WL 1597297, at *5 (E.D.N.Y. Apr. 15, 2019) (rejecting defendants' group pleading argument where "the complaint refers to all the defendants collectively because all the defendants were, it alleges, on the scene and actively involved in the complained-of conduct"). Plaintiff need not, at this stage, specify what each individual's actions were where the complaint gives the relevant defendants notice  as to what the claim is and the grounds upon which it rests. *See Buari v. City of New York*, 530 F. Supp. 3d 356, 390–91 (S.D.N.Y. 2021). I will not categorically reject all claims premised on the allegations pertaining to these three incidents.

Plaintiff's allegations as to the "other incidents," however, do fall short of the pleading requirement. And the fatal flaws do not reside simply in plaintiff's reliance on group pleading. The complaint is largely devoid of any factual support for the plaintiff's claims arising from those incidents. Josie states that on various dates, "defendant officers unlawfully stopped, frisked, detained, and/or arrested the plaintiff and his friends and family at various locations within the confines of NYPD-79th Precinct." Am. Compl. ¶ 99. Those conclusory statements do not provide any factual allegations regarding the actions of the defendant officers, nor do they approximate when and where the alleged encounters took place. Even for those dates named specifically—May 8, 2019, July 1, 2019, and August 28, 2019—plaintiff fails to allege any other actions taken by the defendants or circumstances violating plaintiff's rights. Nor does he specify any details with respect to the August 28, 2019, "unlawful arrest." Am. Compl. ¶ 102. Such a conclusory statement regarding the lawfulness of the arrest does not allege facts showing a lack of probable cause. The absence of any supporting facts does not raise these claims to the realm of plausible allegations.

Nor does the vague and conclusory allegation that "[e]ach and every officer who responded to and/or was present at the location of the arrest(s) and at the precinct and/or station house knew

and was fully aware that the plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring," Am. Compl. ¶ 105, give adequate notice to defendants as to the claims against them, as required by Rule 8. I cannot reasonably infer, based on the plaintiff's thin allegations, that every single officer present at the precinct had knowledge of Josie's arrest, much less how such knowledge would render the individual defendants liable for each of the alleged violations. Although the pleading standard plaintiff must meet does not require an exhaustive catalogue of every fact, a complaint entirely lacking in specific allegations is simply not sufficient. A complaint cannot survive if it states only "naked assertion[s]" absent "further factual enhancement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because these sweeping allegations are devoid of factual enhancement, all of plaintiff's claims relating to these other incidents are dismissed. *See Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 269 (S.D.N.Y. 2007) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) ("Dismissal under Rule 8 is 'usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'").

### III.    Section 1983 Claims

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; rather, it "provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks omitted). To prevail on a claim under Section 1983, a plaintiff must show: (1) the

deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.

### A. Malicious Prosecution against Hunt and Reilly Defendants

Courts evaluate claims for malicious prosecution brought pursuant to Section 1983 using the elements of the underlying torts in state law. *Cook v. Sheldon*, 41 F.3d 73, 79 (2d Cir. 1994). In New York, a plaintiff alleging malicious prosecution must show "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quotation omitted). A plaintiff must also allege "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000). A claim for malicious prosecution against a police officer "requires some showing that the defendant distorted the process by which [the] plaintiff was brought to trial." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015) (quotation omitted). "Showing that the police 'failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith' satisfies the initiation element of malicious prosecution." *Id.* (quoting *Manganiello*, 612 F.3d at 160).

In addition to asserting that this claim is hobbled by impermissible group pleading, defendants argue that the plaintiff has not adequately pleaded the requisite elements of favorable termination or actual malice. Since the filing of this motion, the Supreme Court has clarified that that "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his

prosecution ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1335 (2022). Plaintiff's complaint states that the charges resulting from his first and third arrests "were summarily dismissed by the prosecutors." Am. Compl. ¶¶ 46, 96. Under the *Thompson* standard, the dismissal of the charges against Josie meets the favorable termination element of his malicious prosecution claim.

Defendants also argue that Josie has not alleged that the criminal prosecution was commenced against him with malice, i.e., with "a wrong or improper motive, something other than a desire to see the ends of justice served." *Fulton v Robinson*, 289 F.3d 188, 198 (2d Cir. 2002) (quotation omitted). Plaintiff alleges that the Hunt and Reilly defendants targeted him, arresting him without cause and providing falsified information to the district attorney. Am. Compl. ¶¶ 25, 40–43, 75, 90–93. "In most cases, the lack of probable cause—while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996), *as amended* (May 21, 1996) (quoting *Conkey v. State*, 427 N.Y.S.2d 330, 332 (4th Dep't 1980). As I must accept the plaintiffs alleged facts as true and draw all reasonable inferences in his favor, the plaintiff has adequately alleged a malicious prosecution claim against the Hunt and Reilly defendants as to his first and third arrests.

**B. Denial of Right to a Fair Trial against Hunt and Reilly Defendants**

Josie asserts that the Hunt and Reilly defendants deprived him of his right to a fair trial by fabricating evidence against him. Defendants broadly assert that "the pleading deficiencies exhaustively explained" elsewhere in their motion also plague this claim and it should therefore be dismissed. Defs.' Mem. 25–26.

13

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Harris v. City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000)). To state a due process claim based on fabrication of evidence, the plaintiff must allege that: "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Bailey*, 79 F. Supp. 3d at 446 (quoting *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order)). A trial is not a prerequisite to a claim: a plaintiff need only prove that he suffered a "deprivation of liberty [that] is not 'too remote a consequence' of the act of creating the false information." *Dowling v. City of New York*, No. 11-CV-4954 (NGG) (RML), 2013 WL 5502867, at *6 (E.D.N.Y. Sept. 30, 2013) (quoting *Powers v. Coe*, 728 F.2d 97, 105–06 (2d Cir. 1984). Courts have held that being held at Central Booking and having to make subsequent court appearances—as was allegedly required of the plaintiff in the wake of both relevant arrests— is sufficient to establish a deprivation of liberty. *See Wellner v. City of New York*, 393 F. Supp. 3d 388, 395–96 (S.D.N.Y. 2019).

Plaintiff alleges that Hunt and Reilly defendants arrested him without probable cause and falsely asserted to prosecutors that he had committed the relevant crimes, providing falsified reports to the district attorney's office to support those assertions that allegedly provided the basis for the charges brought against plaintiff in each case. *Cf. Thompson v. City of New York*, No. 18-CV-4105 (PAC), 2020 WL 2097622, at *4 (S.D.N.Y. May 1, 2020) (granting motion to dismiss where plaintiff failed to identify what evidence was fabricated and to whom it was offered). The defendants have not raised any specific objections to this claim, beyond the pleading deficiencies, which I have addressed above. At this stage, Josie's allegations, though thin, are sufficient to raise

14

a plausible inference that both sets of defendants violated his right to fair trial. The motion to dismiss this claim is denied.

### C.  Unlawful Stop and Frisk and Unreasonable Search and Seizure

Plaintiff alleges unlawful stop and frisk and unreasonable search and seizure claims against all individual defendants. The stop and frisk claims, which arise from the other incidents, are dismissed on the basis of deficient pleading, as explained above.[3] Defendants again assert that "the pleading deficiencies exhaustively explained" elsewhere in their motion to dismiss also plague this claim and it should therefore be dismissed. Defs.' Mem. 25–26.

To the extent that plaintiff alleges that the Hunt, Davila, and Reilly defendants subjected him to unreasonable search and seizure, his claims may proceed. The Fourth Amendment to the Constitution of the United States provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. "As the text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014) (quotation omitted). "It is well established that a warrantless search is 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated

---

[3] Plaintiff does not allege facts characterizing his encounters with the Hunt, Davila, or Reilly defendants as constituting instances of an illegal stop and frisk. *See* Am. Compl. ¶¶ 51–52 (during the August 1, 2019, incident, the plaintiff was allegedly "bum-rushed" and immediately handcuffed). As alleged, the defendants, in each instance, performed more than an investigatory *Terry* stop. *Jackson v. City of New York*, 939 F. Supp. 2d 235, 246 (E.D.N.Y. 2013) ("A police officer may stop and briefly detain a person (a 'Terry stop') if the officer has 'a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.'" (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The operable standard for evaluating the lawfulness of the three relevant arrests, then, is probable cause for arrest, rather than reasonable suspicion.

exceptions.'" *United States v. Diaz*, 122 F. Supp. 3d 165, 170 (S.D.N.Y. 2015) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "[S]earches and seizures that occur in the home without a warrant are presumptively unreasonable." *Johnson v. O'Connel*, No. 15-CV-2288 (NSR), 2018 WL 5085702, at *7 (S.D.N.Y. Oct. 17, 2018) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). However, police officers are generally permitted to search a person in connection with a lawful arrest. *United States v. Herron*, 18 F. Supp. 3d 214, 223 (E.D.N.Y. 2014) (citing *United States v. Robinson*, 414 U.S. 218 (1973)).

Plaintiff does not offer factual allegations as to the extent or nature of searches of his home or person, nor does he specifically allege that the defendant officers lacked warrants for his arrest. However, he does allege that the defendants lacked probable cause for all three arrests and that the defendant officers subjected him to unlawful searches, supporting a plausible inference that those searches were not performed incident to a lawful arrest and thus constitute a violation of his Fourth Amendment rights. The motion to dismiss the unreasonable search and seizure claim pertaining to the three arrests is denied.

### D.  Excessive Force

Plaintiff's excessive force claim arises from two different sets of actions alleged to have occurred during each of his three arrests: (1) the manner in which Josie was handcuffed by the Hunt, Davila, and Reilly defendants, and (2) allegations that the Davila defendants pushed Josie and pinned him face down on the ground and that the Hunt and Reilly defendants grabbed, pushed, shoved, and pulled him. Defendants argue that all these allegations lack sufficient detail and specificity.

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is 'objectively unreasonable in light of the facts and circumstances confronting them, without

regard to the officers' underlying intent or motivation.'" *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 267 (S.D.N.Y. 2013) (quoting *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "[n]ot every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted). The excessive force analysis, then, is a contextual one, "subject to an objective test of reasonableness under the totality of the circumstances, which requires consideration of the specific facts in each case," *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). A "de minimis use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir.1993), and a plaintiff typically "must allege that he sustained an injury to maintain an excessive force claim," *see, e.g.*, *B. v. City of New York*, No. 14-CV-1021 (KAM) (PK), 2016 WL 4530455, at *10 (E.D.N.Y. Aug. 29, 2016) (quotation omitted). However, "[t]he slightness of injury suffered as a result of the challenged use of force . . . does not preclude a finding that such force was objectively unreasonable." *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 567 (E.D.N.Y. 2013) (citing *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004).

When determining whether the force used was unreasonable and therefore excessive, courts look to (1) the severity of the crime at issue, (2) whether the arrestee poses an immediate threat to the safety of the officers or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. In analyzing an excessive force claim arising out of the use of handcuffs, I must apply a more specific analysis. For such claims, "courts consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were unreasonably tight; and (3) the severity of the resulting

17

injury to the wrists." *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 723 (S.D.N.Y. 2015) (citation omitted). There is well-developed case law in this circuit that "tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising." *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (collecting cases). "[C]ourts in the Second Circuit *have* allowed plaintiffs to pursue excessive force and unreasonable handcuffing claims even where the injury was not permanent or severe, where the force used was excessive and gratuitous." *Jackson*, 939 F. Supp. 2d at 253 (E.D.N.Y. 2013) (emphasis added).

In each of the three arrests, the crimes for which Josie was arrested did not involve violent criminal activity. *Cf. Adedeji*, 935 F. Supp. 2d at 568–69 (highlighting that courts have found more active force reasonable in circumstances, *inter alia*, involving arrests for violent criminal activity). Nothing in the complaint suggests that Josie posed a safety threat to the officers or others in the immediate vicinity, nor is there any indication that he was actively resisting arrest. These factors go to the totality of circumstances and indicate that an unusual degree of force would not have been justified for any of the three arrests. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 442–43 (E.D.N.Y. 2012) (noting that where "plaintiffs allegedly were compliant with police orders and not violent or resisting arrest," this fact "suggests that their arrests likely did not necessitate an unusual degree of force").

Plaintiff alleges that during all three arrests his handcuffs were too tight and defendants ignored his complaints and requests that the handcuffs be loosened. Am. Compl. ¶¶ 30–32, 56–58, 80–82. He alleges experiencing pain and numbness while he was handcuffed but does not allege any permanent or long-lasting pain or injury as a result of being handcuffed. *Id*. ¶¶ 30, 56, 79. The factual allegations regarding the manner in which he was handcuffed, standing alone, are insufficient to establish an excessive force claim for any of his three arrests.

Plaintiff alleges that upon entering his home, the Hunt and Reilly defendants grabbed, pushed, shoved, and pulled him, but does not allege any injury resulting from that treatment. *Id.* ¶¶ 28, 78. Josie's complaint, however, fails to allege either extensive injury or an excessive or gratuitous use of force by the Hunt and Reilly defendants. *Cf. Jackson*, 939 F. Supp. 2d at 253 ("Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches from a cut inside the mouth." (quotation omitted)). The factual allegations as to the Hunt and Reilly defendants do not suggest either that those defendant officers used an undue amount of physical force in effecting his arrest or that the plaintiff suffered any injury as a result of that force. Plaintiff's allegations are thus insufficient to support an excessive force claim against the Hunt and Reilly defendants and I dismiss the claim as to those defendants.

According to the plaintiff, the Davila defendants forcibly pushed him to the ground and pinned him face down, with their feet on his back, after he was handcuffed, leaving him with "cuts and bruises on his wrists and arms." Am. Compl. ¶¶ 52–53. Plaintiff alleges injury resulting from treatment that goes beyond a reasonable amount of force to effect his arrest. Although Josie has failed to plead an excessive force claim based on the tightness of his handcuffs alone for any of his three arrests, the facts alleged against the Davila defendants are sufficient to state a claim without the handcuff allegation. *See Gersbacher*, 134 F. Supp. 3d at 723–24 (finding that plaintiff failed to plead an excessive force claim based upon the tightness of his handcuffs where he alleged only cuts and bruises on his wrists but allowing the claim to proceed on the basis of other allegations regarding defendants' use of excessive force). The excessive force claim as to the Davila defendants survives.

### E. Deliberate Indifference against Davila Defendants

Plaintiff asserts that the Davila defendants denied him "treatment needed to remedy his serious medical conditions," demonstrating a deliberate indifference to his medical needs. Am. Compl. ¶ 139.

To sustain a deliberate indifference claim, a plaintiff must satisfy (1) an objective prong, showing that the acts or omissions were "sufficiently serious to constitute objective deprivations of the right to due process" and (2) a mens rea prong, showing that "the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

Under the objective prong, the plaintiff must show that his medical need was "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quotation omitted). While there is no fixed test for determining what constitutes a sufficiently serious deprivation, relevant factors for this inquiry include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Rodriguez v. Corizon Health Care*, No. 15-CV-5251 (GBD) (GWG), 2016 WL 3766397, at *2 (S.D.N.Y. July 11, 2016) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Plaintiff has failed to sufficiently plead the objective prong, and instead has merely restated a conclusory recitation of the elements of this claim in relation to the alleged injuries suffered at the hands of the Davila defendants. This Circuit has held that dismissal of a deliberate indifference claim is improper where plaintiffs alleged significant and permanent injuries resulting tight handcuffs. *See Davidson v. Flynn*, 32 F.3d 27, 29–30 (2d Cir. 1994). Here, Josie has alleged that

he received cuts and bruises and experienced pain and numbness while being handcuffed but does not supply any other facts that would plausibly allege significant injury or chronic or substantial pain. *Cf. Perez v. City of New York*, No. 07-CV-10319 (RJS) (KNF), 2009 WL 1616374, at *9 (S.D.N.Y. June 8, 2009) (holding that "swelling and reddening" from tight handcuffs did not constitute sufficiently serious injury were plaintiff did not allege any serious and permanent physical injury"); *Ali v. Ramos*, 16-CV-1994 (ALC), 2018 WL 1353210, at *4 (S.D.N.Y. Mar. 14, 2018). Without further factual allegations, the limited and conclusory allegations contained in the complaint do not state a claim for relief for deliberate indifference. The claim is dismissed.

## F. Unlawful Entry against Hunt and Reilly Defendants

Plaintiff alleges a claim for unlawful entry, in violation of his Fourth Amendment rights, against the Hunt and Reilly defendants. Plaintiff alleges that the defendant officers entered his home and arrested him there without probable cause. The Fourth Amendment protects individuals and their homes against unreasonable searches and seizures, *see* U.S. Const. amend. IV, and "[t]o be reasonable under the Fourth Amendment, a search of a home must either be conducted pursuant to a warrant or meet an exception to the warrant requirement." *Anthony v. City of New York*, 339 F.3d 129, 135 (2d Cir. 2003) (citing *Kyllo v. United States*, 533 U.S. 17, 31 (2001). Although warrantless searches of private property and arrests are generally presumed to be unreasonable, "the law recognizes certain exceptions, for example, when the search is conducted pursuant to the consent of an authorized person," *United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)), or where there are exigent circumstances, *see United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011) (citing *Kentucky v. King*, 563 U.S. 452, 460 (2011)).

The complaint is predictably thin on the circumstances of the defendant officers' entries into the plaintiff's home. Plaintiff alleges that "defendants unlawfully entered into plaintiff's premises" and arrested him "without cause," forcing their way into his home and "damaging and/or destroying the plaintiff's properties." Am. Complaint ¶¶ 25, 27, 75, 77, 188. The facts alleged do not suggest that the exigent circumstances exception should apply. Contrary to the defendant's argument, however, the plaintiff's assertion that the defendant officers "forced" their way into the apartment sufficiently alleges that they entered without permission. *Id.* ¶¶ 27, 77.

Whether the entry was warrantless was not specifically addressed by either party. Plaintiff does not so contend, and defendants do not argue to the contrary. Plaintiff does, however, complain that defendants lacked probable cause to arrest him, which gives rise to a broad challenge to the lawfulness of the entry. Under the circumstances, and in view of the early stage of this proceeding, I will permit this claim to proceed to discovery to determine whether or not the entry was in fact warrantless.

### G. Equal Protection

Plaintiff alleges that "[d]efendant officers routinely harass the plaintiff and his friends and family, and have refused to conduct any investigations concerning the plaintiff's complaints simply because he is a member of a racial/ethnic minority group." Am. Compl. ¶ 147. To the extent Josie alleges equal protection violations in relation to his three arrests, the claim is dismissed.

"To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000). To plead intentional race discrimination, a plaintiff may allege that a facially neutral law or policy is applied in a discriminatory manner. *Id.* A plaintiff may alternatively allege that government actors engaged in selective enforcement or selective

prosecution based on the impermissible consideration of race. *See Miller v. Terrillion*, 391 F. Supp. 3d 217, 225 (E.D.N.Y. 2019). A selective enforcement or prosecution claim requires a showing that the plaintiff was treated differently from other similarly situated individuals. *Pyke v. Cuomo*, 258 F.3d 107, 109–110 (2d. Cir. 2001). But under either standard, a conclusory statement that defendants harassed plaintiff on the basis of his racial identity is insufficient to state a claim.

Plaintiff has not alleged any facts regarding similarly situated individuals, and thus has not pleaded an equal protection claim based on selective enforcement or prosecution. Plaintiff's only discussion of race-based discrimination appears in support of his *Monell* claims, where he asserts broad patterns of abusive behavior against "members of racial/ethnic minority groups," including his own, and cites a number of cases in this circuit that detail abusive and discriminatory behavior on the part of the N.Y.P.D. Am. Compl. ¶¶ 161–66. Plaintiff's list of those cases does not, however, serve as an alternative to specific allegations of intentional discrimination, which are necessary to support an equal protection claim. Plaintiff identifies himself as African American and a member of a minority group, *id.* ¶¶ 156, 161, but the complaint lacks any factual allegations relating to how the defendants' actions amounted to unlawful discrimination on account of his race. Nor does the complaint contain factual allegations regarding complaints he allegedly filed that were subsequently ignored. *Id.* ¶ 147. Plaintiff's threadbare recital of conclusory allegations does not rise above a speculative level and is inadequate to state a claim. The equal protection claim is dismissed.

### H. Conspiracy

Plaintiff alleges that the defendant officers conspired to deprive him of his constitutional rights. The facts plaintiff alleges, however, do not plead a conspiracy claim, nor can he overcome the intra-corporate conspiracy doctrine. Accordingly this claim is dismissed.

To make out a conspiracy claim, a plaintiff must establish the occurrence of an underlying tort, plus "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006).

By broadly referring to a conspiracy to violate his constitutional rights, Am. Compl. ¶ 156, plaintiff appears to allege that defendants conspired to commit every one of plaintiff's constitutional claims. As I understand his pleading, plaintiff is alleging that all of the individual defendant officers were part of the same conspiracy. But aside from the cursory statement that the individual defendants "act[ed] in concert" to arrest him, plaintiff does not allege facts supporting even the inference that the defendant officers made an agreement to deprive plaintiff of his constitutional rights. *Id.* ¶¶ 25, 47, 75. I cannot reasonably infer such a conspiracy from the allegations set forth in the plaintiff's amended complaint. *See Ciambrello v. County. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (quotation omitted)).

Even if plaintiff had pleaded sufficient factual allegations, his conspiracy claim would still fail. "The intra-corporate conspiracy doctrine provides that defendants working for the same employer are legally incapable of conspiring together when the offending conduct occurred within the scope of their employment." *Demosthene v. City of New York*, No. 14-CV-816 (SJ) (VMS), 2015 WL 5093116, at *6 (E.D.N.Y. June 26, 2015), *report and recommendation adopted*, 2015 WL 5093164 (E.D.N.Y. Aug. 28, 2015), *aff'd*, 831 F. App'x 530 (2d Cir. 2020) (quotation omitted) (collecting cases). Here, all of the defendant officers are employed by the N.Y.P.D. and are thus

employees of a single municipal corporation, New York City. *See Little v. City of New York*, 487 F. Supp. 2d 426, 441–42 (S.D.N.Y. 2007) (holding that police officers employed by the same municipality cannot conspire with one another). Plaintiff alleges that the defendant officers were acting within the scope of their employment at all times during the relevant arrests. Am. Compl. ¶¶ 7–24, 175. Thus, plaintiff's conspiracy claim fails as a matter of pleading and as a matter of law. This claim is dismissed.

### I.   Failure to Intervene

Plaintiff alleges that all of the defendant officers both directly violated his constitutional rights and failed to intervene while other officers violated his rights. Defendants argue that a police officer can either be personally involved *or* fail to intervene, but not both.

Defendants' argument is unavailing. It is well-established that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citation omitted). An officer is liable for failing to intervene when the officer observes or has reason to know that a constitutional violation has taken place, and the constitutional violation was committed by a law enforcement officer. *Id.* Failure to intervene claims are "contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Matthews*, 889 F. Supp. 2d at 443–44 (citation omitted). For each of his three arrests, plaintiff has identified individual officers—the Hunt, Davila, and Reilly defendants—who he alleges participated in the arrests. Because the plaintiff has adequately pleaded underlying constitutional violations arising from those arrests, he is "entitled to discovery to determine which officers participated directly in the alleged constitutional violations and which officers were present and failed to intervene." *Gersbacher*, 134 F. Supp. 3d at 725 (quotation omitted). The

motion to dismiss as to this claim is denied.

### J.  Monell Liability

Plaintiff alleges that the city, acting through the N.Y.P.D., had "actual and/or de facto policies, practices, customs and/or usages of [(1)] failing to properly train, supervise, or discipline its police officers" in various proper procedures; (2) "failing to properly screen its prospective police officers"; and (3) "wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals" on the basis of race. Am. Compl. ¶¶ 160–61. For the reasons discussed below, plaintiff fails to state a claim for municipal liability under any of these theories because the allegations are conclusory and do not support an inference that any constitutional harm to plaintiff was caused by deliberate municipal action.

Municipalities cannot be held "vicariously liable . . . for their employees' actions" via Section 1983 claims. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). They may, however, be held liable for "their *own* illegal acts." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Assuming that plaintiff can establish a constitutional violation occurred, to pursue a Section 1983 claim against a municipality, he

> must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an "affirmative link"—between the policy and the deprivation of his constitutional rights.

*Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Thus, "a municipality can be liable under [Section] 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

As relevant here, a plaintiff can satisfy the policy or custom requirement by alleging (1) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware," or (2) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quotation omitted).

To demonstrate a widespread practice, a plaintiff must "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (citation omitted). A plaintiff may support these allegations "by citing to complaints in other cases that contain similar allegations." *Buari*, 530 F. Supp. 3d at 398 (quotation omitted). But those cited "complaints must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." *Id.* at 399 (collecting cases).

The second category, deliberate indifference, "is a stringent standard of fault" and "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. "A showing of simple or even heightened negligence will not suffice." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of

constitutional rights." *Connick*, 563 U.S. at 62. Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citing *Bryan Cnty.*, 520 U.S. at 409).

Plaintiff alleges a litany of municipal policies and customs but offers little in the way of support for those allegations. As a starting point, plaintiff alleges the municipal defendant had a de facto policy of targeting minorities for illegal stops and frisks. This alleged policy arises not from the three arrests attributable to the Hunt, Davila, and Reilly defendants, but from the "other incidents" not attributable to any specific defendants that I already have held insufficiently pled. *See infra* § II. Because plaintiff has failed to plead the underlying constitutional violation of race-based discrimination, I need not reach his *Monell* claims alleging municipal liability for policies or customs pertaining to race-based discrimination and harassment.

Moreover, plaintiff does not plead the existence of such a policy. To substantiate his stop-and-frisk claim, plaintiff cites *Floyd v. City of New York*, in which the court held that the N.Y.P.D. had engaged in a pattern of suspicionless stops and frisks sufficient to establish a policy of targeting black and Hispanic New Yorkers. Am. Compl. ¶ 163 (citing *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011)). Plaintiff also cites *Ligon v. City of New York* and *Davis v. City of New York*, which likewise challenged the N.Y.P.D.'s stop-and-frisk practices and were ultimately consolidated with *Floyd*. Am. Compl. ¶ 164 (citing *Ligon v. City of New York*, 925 F. Supp. 2d 478, 485–86 (S.D.N.Y. 2013) and *Davis v. City of New York*, 959 F. Supp. 2d 324 (S.D.N.Y. 2013)). The plaintiff does not include any factual allegations from *Floyd* nor does he specify their relevance to the alleged facts of this case. Even if he had, such allegations would not sufficiently allege the existence of a municipal policy or custom. The events in *Floyd* concern N.Y.P.D. practices prior to the issuance of that decision in August 2013. The events in this case

took place six or more years after the *Floyd* decision. *Floyd* and the related cases, on their own, do not establish policy or custom. *See Sullivan v. City of New York*, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *15 (S.D.N.Y. Jul. 10, 2018) (holding that even in a case in which the plaintiff drew more specifically from the facts in *Floyd*, citing to that case alone did not support a policy or custom for events that took place three years after the issuance of the *Floyd* decision).

Plaintiff also points to three civil cases in which plaintiffs alleged that N.Y.P.D. officers "routinely harass, wrongfully arrest, illegally stop, frisk, search, seize, abuse, humiliate, degrade and/or maliciously prosecute individuals who are members of various racial/ethnic minority groups, and that the defendants have refused to conduct any investigations concerning their complaints." Am. Compl. ¶ 165. Though this broad characterization suggests superficially similar allegations to those in this case, any such parallels do not substantiate the existence of a policy or custom, as all three cases settled without adjudication of liability. *See Buari*, 530 F. Supp. 3d at 399.

Plaintiff also does not adequately allege that a racially discriminatory stop-and-frisk policy was the proximate cause of his unlawful arrests or of the other alleged violations. Plaintiff alleges that "many police officers assigned to NYPD-79th Precinct . . . are familiar with [him]," suggesting, if anything, personal rather than racial animus. Am. Compl. ¶ 97. As noted above, what plaintiff does not allege, in non-conclusory terms, is that he was targeted on account of his race. In light of this paucity of factual allegations, plaintiff does not allege a clear causal connection between the alleged stop-and-frisk policy and his own treatment.

Plaintiff likewise fails to plead facts sufficient to plausibly allege failures to train, screen, or supervise capable of giving rise to municipal liability. Plaintiff asserts in conclusory fashion that his claims relate to the "City's failure to properly train, supervise, or discipline its police

officers," Am. Compl. ¶ 168, but plaintiff makes no specific allegations with respect to any of his alleged constitutional harms. The mere assertion that a custom or policy exists, in the absence of factual allegations, is insufficient to plead a *Monell* claim. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citation omitted). Moreover, plaintiff fails to plausibly allege that there was an obvious need for increased supervision, training, or screening in order to prevent constitutional violations and that the municipal defendant policymaker "failed to make meaningful efforts to address" the risk of such a harm. *See Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quotation and alteration omitted) (holding that deliberate indifference can be demonstrated with a showing of such inaction in the face of increased need). Plaintiff again lists a number of civil complaints filed in this court (all by plaintiff's counsel and setting forth nearly identical boilerplate language), which he claims arise from circumstances similar to the facts here. But he makes no attempt to clarify the ways in which the allegations in each of those cases is similar. More importantly, each of those cases was settled without adjudication of liability and thus do not support an inference that a municipal policy exists. Plaintiff's allegations are also insufficient to plausibly allege "a specific deficiency in the city's training program" that is closely related to his "ultimate injury," such that it can be said to have actually caused plaintiff's constitutional deprivation. *See Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (quotations omitted).

Plaintiff has failed to plead a claim of municipal liability under any of his proposed theories and this claim is dismissed.

**IV.    State Law Claims**

Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality. *See* N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981)). The notice-of-claim provisions extend to state constitutional torts as

well. *See 423 S. Salina Street, Inc. v. City of Syracuse*, 68 N.Y.2d 474, 489 n.5 (1986), *appeal dismissed and cert. denied*, 481 U.S. 1008 (1987). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. N.Y. City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (quotation omitted). "[F]ederal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision." *Felder v. Casey*, 487 U.S. 131, 151 (1988). Notice of claim requirements are construed "strictly" and "[f]ailure to comply with these requirements ordinarily requires dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793–94.

The burden is ultimately on the plaintiff to demonstrate full compliance with the notice of claim requirements. *See In re Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943, 948 (2d Dep't 1989). For the purposes of deciding this motion to dismiss, Josie has complied with the basic preliminary requirements that a "plaintiff must plead in the complaint that: (1) the Notice of Claim was served; (2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing N.Y. Gen. Mun. Law § 50-i).

Plaintiff maintains that the notice-of-claim requirement applies only to claims against municipal defendants and not to those against individual defendants. *See* Pl.'s Mem. 22. In so doing he cites to the wrong portion of the statute,[4] but it is true (as defendants acknowledge, Defs.'

---

[4] The case plaintiff cites, *Gilliard v. City of New York*, No. 10-CV-5187 (NGG) (CLP), 2013 WL 521529, at *15 n.19 (E.D.N.Y. Feb. 11, 2013), concerns the dismissal of claims where a plaintiff failed to comply with the procedures set forth in Section 50-h for a hearing in which defendants may examine a claimant regarding the events from which the claim arises. I take defendants'

Reply 10–11, ECF No. 35) that when individual defendants are named alongside a municipal defendant, service of a notice of claim upon the individuals is not a condition precedent to suit. N.Y. Gen. Mun. Law § 50-e(1)(b).

Defendants contend, however, that plaintiff failed to serve a compliant Section 50 notice for claims arising from the plaintiff's third arrest. Plaintiff does not offer any answer to the defendants on this point or demonstrate that he did in fact serve a compliant notice for the claims arising from his third arrest. "District courts in this circuit have found that [a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *Bertuzzi v. Copiague Union Free Sch. Dist.*, No. 17-CV-4256 (SJF) (AKT), 2020 WL 5899949, at *27 (E.D.N.Y. Mar. 9, 2020), *report and recommendation adopted as modified*, 2020 WL 3989493 (E.D.N.Y. July 15, 2020) (quotation omitted). Although plaintiff failed to respond to defendants' contentions, I will grant plaintiff fourteen days from the issuance of this opinion to fulfill his burden to provide proof of compliance with Section 50's notice requirement. Absent such a showing, plaintiff's state law tort claims against the municipal defendant arising from his third arrest shall be dismissed.

### A. Assault and Battery, False Imprisonment, and Malicious Prosecution Claims

Defendants raise no further challenges to plaintiff's state law tort claims for assault and battery, false imprisonment, and malicious prosecution. Therefore, those claims against the individual defendants in relation to plaintiff's three arrests may proceed. Claims against the municipal defendant may proceed, subject to plaintiff's demonstrating compliance with the notice-of-claim requirement as to the claims arising from his third arrest.

---

arguments to concern the filing of a notice itself, as set forth in Sections 50-e and 50-i, rather than compliance with the hearing procedures set forth in 50-h. *Gilliard* is thus inapposite.

### B. Trespass

Plaintiff's complaint also alleges a state law tort claim for trespass against the Hunt and Reilly defendants and the municipal defendant. As in his federal claim for unlawful entry, plaintiff alleges that the Hunt and Reilly defendants arrested him in his own home without probable cause.

"Under New York law, trespass is the intentional invasion of another's property." *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996). "The requisite elements for a claim of trespass are the intentional entry by defendants on to plaintiffs' land and the wrongful use without justification or consent." *Matthews v. Malkus*, 377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005) (discussing New York law). "[A] law enforcement officer is privileged to enter upon premises . . . to execute an arrest warrant in the home of the person to be arrested" but "New York cases support the proposition that a law enforcement officer's privilege remains limited to constitutional searches and seizures." *Voskerchian v. United States*,  No. 98-CV-335E(M), 1999 WL 66709, at *4 (W.D.N.Y. Feb. 10, 1999).

Defendants first argue that plaintiff has failed to plausibly allege a claim by providing insufficient detail and conclusory statements. Second, defendants contend that the claim fails as a matter of law because the entry was privileged

The arguments on this issue largely parallel those made in relation to plaintiff's federal claim for unlawful entry. As noted above, plaintiff has not provided much in the way of specific factual allegations supporting this claim. But the reasoning set forth above on the sufficiency of plaintiff's allegations regarding the lawfulness of the arrest applies here as well. Even absent a specific pleading that the defendant officers lacked arrest warrants, on the basis of plaintiff's allegation that the defendant officers arrested plaintiff without probable cause, and thus do not qualify under the law enforcement privilege, I will allow this claim to proceed. As noted above,

however, plaintiff must demonstrate compliance with notice of claim requirements as to claims arising from his third arrest, or the trespass claim against the municipal defendant in relation to that arrest will be dismissed.

### C.  Intentional and Negligent Infliction of Emotional Distress Claim

Plaintiff alleges claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") against all defendants. To state an IIED claim, a plaintiff must allege "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). For conduct to qualify, it "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quotation omitted). The Second Circuit has noted that IIED is a "highly disfavored tort under New York law . . . to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (alteration, citations, and quotations omitted). New York "public policy bars claims sounding in [IIED] against a government entity," *Lauer v. City of New York*, 659 N.Y.S.2d 57, 58 (2d Dep't 1997), and a number of New York courts have held that IIED claims are "precluded where the offending conduct is embraced by a traditional tort remedy." *E.E.O.C. v. Die Fliedermaus, LLC*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (collecting cases); *see also Jackson v. Nassau County.*, 552 F. Supp. 3d 350, 385 (E.D.N.Y. 2021).

That Josie has already asserted other tort actions based on the same facts and circumstances thus weighs against his ability to proceed with his IIED claim. *See Turley*, 774 F.3d at 158. Further, Josie does not come close to meeting the considerable threshold for alleging extreme and

outrageous conduct, and indeed does not state any specific facts or circumstances that support an allegation of outrageous behavior. *See Ojo v. United States*, No. 16-CV-4112 (MKB) (LB), 2019 WL 3852391, at *9 (E.D.N.Y. Aug. 15, 2019) (dismissing an IIED claim where, as here, the plaintiff "merely stat[ed] that the conduct is extreme and outrageous . . . without [citing] specific facts or circumstances to support [his] allegations" (internal quotation marks and citation omitted)). Plaintiff similarly fails to plead the other elements—intent, severe emotional distress, or causation, except in a conclusory fashion, merely reciting the elements of an IIED claim. Accordingly, the motion to dismiss Josie's claim for intentional infliction of emotional distress is granted.

The NIED claim likewise fails. As with IIED claims, NIED should be asserted as a last resort. This court has, in fact, described NIED claims as "an even greater stretch" than IIED claims. *Jackson*, 552 F. Supp. 3d at 386. "In general, New York courts have exhibited a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress.'" *Id.* (quoting *Broadnax v. Gonzalez*, 2 N.Y.3d 148, 153 (2004)); *see also Buoniello v. Ethicon Women's Health & Urology*, No. 19-CV-4021 (DRH) (ARL), 2020 WL 5802276, at *4 (E.D.N.Y. Sept. 29, 2020) (dismissing plaintiff's NIED claim because it was duplicative of other tort causes of action); *Berrio v. City of New York*, No. 15-CV-9570 (ALC), 2017 WL 118024, at *7 (S.D.N.Y. Jan. 10, 2017) ("New York does not recognize NIED or IIED causes of action where the conduct underlying them may be addressed through traditional tort remedies . . . ."). Like his IIED claim, Josie's NIED claim arises out of the same facts and circumstances as his other tort claims. The NIED claim is dismissed.

### D.  Negligent Hiring and Retention of Employment Services Claim

Plaintiff asserts a claim against the city, acting through the N.Y.P.D., for negligent hiring

and retention. To state a claim for negligent hiring or retention, a plaintiff must plausibly allege, in addition to the elements of standard negligence, "(1) that the tort-feasor and the defendant were in an employee-employer relationship, (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations and quotation marks omitted). "Generally, where an employee is acting within the scope of his or her employment . . . , no claim may proceed against the employer for negligent hiring or retention." *Fraser v. City of New York*, No. 20-CV-5741 (NGG) (RER), 2022 WL 3045524, at *5 (E.D.N.Y. Aug. 1, 2022) (quoting *Karoon v. N.Y.C. Transit Auth.*, 659 N.Y.S.2d 27, 29 (1st Dep't 1997) (granting defendant New York City Transit Authority summary judgment on negligent hiring, retention, and training claim because bus driver was acting within the scope of employment)).

Here, other than alleging that the defendant officers were in an employee-employer relationship with the municipal defendant, plaintiff fails to allege facts to support any other element of negligent hiring and retention. Specifically, the complaint does not allege any facts showing that the N.Y.P.D. "knew or should have known of the [officers'] propensity for the conduct which caused [plaintiff's alleged] injury"—as would be required to plausibly allege this claim. *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 654 N.Y.S.2d 791, 793 (2d Dep't 1997).

Plaintiff attempts to save his claim by arguing that because the defendants have not admitted that its employees were acting within the scope of their employment, the claim should be preserved for a jury.[5] However, plaintiff expressly alleges only that the defendant officers were

---

[5] Plaintiff also, again, raises the issue of the appropriate pleading standard, arguing that a more lenient state standard should apply. Pl.'s Mem. 25. However, in quoting from the case on which he relies, plaintiff notably neglects the stated rule: a federal court applies state pleading rules "in

acting within the scope of their employment at all times when interacting with the plaintiff. Am.

Compl. ¶¶ 7–24, 175; *see Est. of Jaquez ex rel. Pub. Adm'r of Bronx County v. City of New York*,

No. 10-CV-2881 (KBF), 2014 WL 2696567, at *7 (S.D.N.Y. June 9, 2014) (finding that a claim

for NIED failed as a matter of law where plaintiffs "failed to allege, even in the alternative, that

the individual defendants were acting outside the scope of their employment at the time of the

alleged misconduct").

Because all alleged facts support the inference that the officers were acting in the scope of

their employment, and Josie has not pleaded in the alternative that the officers were acting outside

the scope of their employment, defendants' motion to dismiss plaintiff's claim for negligent hiring

and retention is granted.

## V.    State Constitutional Claims

Plaintiff alleges that all defendants have violated his rights under the New York State

Constitution by contravening its provisions regarding cruel and unusual punishment, due process,

freedom of speech, equal protection, and unreasonable searches and seizures. Am. Compl. ¶ 173.

Defendants broadly assert that "the pleading deficiencies exhaustively explained" elsewhere in

their memo are fatal here as well. Although defendants do not otherwise address specific

arguments relating to the viability of plaintiff's state constitutional claims, such claims are not

cognizable where federal constitutional torts and state torts are available to remedy plaintiff's

claims.

---

evaluating claims of fraudulent joinder." *Saveria JFK, Inc. v. Flughafen Wien*, AG, No. 15-CV-6195 (RRM), 2016 WL 11263673, at *6 (E.D.N.Y. May 3, 2016), *report and recommendation adopted*, No. 15-CV-6195 (RRM)(RLM), 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017). I am not evaluating a fraudulent joinder claim here. Although I apply state substantive law to plaintiff's state law claims, pleading standards are a matter of procedural law governed in this court by federal, not state, law.

The New York Court of Appeals has recognized the viability of a state constitutional tort claim but in so doing noted that such a cause of action is a "narrow remedy." *Brown v. State of New York*, 89 N.Y.2d 172, 192 (1996). Indeed, it is well-settled that "no private right of action exists for violations of the New York State Constitution where the plaintiff has an alternative remedy under § 1983 for violations of parallel provisions of the U.S. Constitution." *Buari*, 530 F. Supp. 3d at 408 (quotation omitted); *see also Alwan v. City of New York*, 311 F. Supp. 3d 570, 585–86 (E.D.N.Y. 2018) (collecting cases).

Unreasonable search and seizure claims are largely cognizable under the Fourth Amendment of the United States Constitution; plaintiff's state claim for cruel and unusual punishment finds its mirror in his federal claims for deliberate indifference and excessive force; equal protection claims can be brought under the Fourteenth Amendment; and the due process protections ensconced in the state constitution find parallels in the Fifth and Fourteenth Amendments. *See* U.S. Const. amends. IV, V, XIV; N.Y. Const. art. I, §§ 5, 6, 11, 12. Indeed, the "New York State Constitution's guarantees of equal protection and due process are virtually coextensive with those of the U.S. Constitution." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999), *abrogated on other grounds by Ginsburg v. Healey Car and Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999) (citations omitted). State constitutional claims for excessive force are likewise cognizable as state torts for assault and battery. *Alwan*, 311 F. Supp. 3d at 588.

Plaintiff has not alleged a federal free speech claim, which would provide an alternative remedy for his state constitutional claim. More significantly, he has not pleaded any facts in support of such a state claim. To the extent plaintiff sought to substantiate his freedom of speech claim with allegations that defendants have "refused to conduct any investigations concerning [his] complaints" or that his arrests themselves constitute a form of retaliation, Am. Compl. ¶ 147, such

allegations are conclusory and not otherwise indicative of a freedom of speech claim, as the plaintiff has not pleaded that he was engaged in constitutionally protected speech, *see Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 394 (2d Cir. 2018) (citation omitted) (stating the elements of a First Amendment retaliation claim); *see also Carter v. Incorporated Village of Ocean Beach*, 693 F. Supp. 2d 203, 212 (E.D.N.Y. 2010) ("[F]ree speech claims under Article 1, Section 8 of the New York State Constitution are subject to the same analysis as free speech claims under the First Amendment . . . .").

Plaintiff does not, however, have adequate alternative remedies for his constitutional tort claims against the municipal defendant. "[U]nlike cases brought under § 1983, municipalities may be liable for the common law torts . . . committed by their employees under the doctrine of *respondeat superior*." *Buari*, 530 F. Supp. 3d at 409 (quotation omitted). Because the equal protection provisions of the state constitution are virtually coextensive with those of the federal Constitution, and because I have dismissed plaintiff's equal protection claim, there is no violation under which the municipal defendant may be held vicariously liable. To the extent plaintiff seeks to impose liability on the city under a common law theory of *respondeat superior* for his state constitutional claims for cruel and unusual punishment, violations of due process, and unreasonable searches and seizures, he may proceed. [6]

---

[6] As noted above, the notice-of-claim requirement applies to constitutional torts asserted against the city. *D.H. v. City of New York*, 309 F. Supp. 3d 52, 81 (S.D.N.Y. 2018) (citing N.Y. Gen. Mun. Law §§ 50–e(1)(a); 50–i(1); 50–k(6)). The plaintiff must demonstrate compliance with that requirement as to claims arising from his third arrest, or the state constitutional tort claims against the municipal defendant in relation to that arrest will be dismissed.

## CONCLUSION

For the above stated reasons, plaintiff's claims may proceed only as they pertain to his first, second, or third arrests. The following claims (in addition to the false arrest claim, which defendants did not seek to dismiss) survive the motion to dismiss:

- Malicious prosecution pursuant to Section 1983;

- Fabrication of evidence and denial to right of a fair trial pursuant to Section 1983;

- Unreasonable search and seizure pursuant to Section 1983;

- Excessive use of force as to the Davila defendants pursuant to Section 1983;

- Unlawful entry pursuant to Section 1983;

- Failure to intervene pursuant to Section 1983;

- State tort claims for false arrest, malicious prosecution, assault and battery, and trespass;

- State constitutional claims against the municipal defendant for cruel and unusual punishment, violations of due process, and unreasonable searches and seizures.

Within fourteen days of the issuance of this opinion, plaintiff must file proof of his compliance with the notice-of-claim requirement. Absent such a showing, the state tort claims against the municipal defendant arising from his third arrest will be dismissed.

All other claims are dismissed, with prejudice.


SO ORDERED.

                                                    _____/s/_____

                                                    Allyne R. Ross
                                                    United States District Judge


Dated:                   June 1, 2023
                         Brooklyn, New York

40